Good morning, your honors. My name is Estelle McKee with the Asylum and Convention Against Torture Appellate Clinic at Cornell Law School. Pro bono counsel for Ms. Pineda Escobar. I would like to reserve two minutes for rebuttal. All right, watch your clock, please. May it please the court, there are only two issues right now, and that is whether for purposes of asylum and withholding of removal, the agency failed to consider highly probative evidence that the government of El Salvador was unwilling or unable to protect Ms. Pineda Escobar from her husband's violent physical and sexual abuse, and two, whether the agency made the same error as well as a legal error in applying the wrong legal standard when it denied Convention Against Torture Protection, finding that Ms. Pineda Escobar had not met the acquiescence requirement. But regardless of... Counsel, I just want to clarify, are you not arguing, are you not arguing that the government didn't meet its substantial evidence? So, oh, apologies, your honor. I wanted to clarify my question, but if you get it... We are arguing for remand, but it is not just on substantial evidence. The issue of whether the agency failed to consider highly probative evidence, that is a legal error that warrants de novo review. But if this court finds that the agency did consider highly probative evidence, then substantial evidence review would apply. Counsel, I don't understand why you're not asking us to just outright grant this petition. What remaining issues have to be determined on remand? Well, if this court is willing to outright grant the petition, then we do ask for that. I mean, I'm trying to figure out, I mean, in terms of the... there's only one, and it's a legal determination, whether or not the government was willing... unable or unwilling to control the husband's violence against her. And it seems very clear from the record that the government was willing, but the government was unable. And that substantial evidence would not support a determination that the government was able. But if we were to grant on that issue, what would we have... what's the remand for? Your Honor, I believed that... I believe that the Board of Immigration Appeals only addressed acquiescence and inability and unwillingness, and not the remaining grounds that the immigration judge denied on. And to the extent that means that the Board of Immigration Appeals found the remaining grounds not, you know, not sustainable, then yes, Your Honor is right. Then in that case, this court could just outright grant. And our position is that regardless of which standard of review this court relies on, Ms. Pineda- El Salvador is unwilling or unable to protect her from her husband. It seems to be willing. The country reports show that it's made some progress. It's trying to. It's enacted certain laws that it would be willing to, but it's just not been able to. Exactly so, Your Honor. At least to the extent we are talking about the federal government or the government as a whole, the Department of State report is very clear that it is ineffective and there is widespread domestic violence that the government simply cannot control. If we are talking about state actors at the local level, such as the local police, then there is a question as to whether they are unable or unwilling. Either way, Ms. Pineda- Escobar would have established this element of asylum. It's an odd BIA decision because, first of all, it seems to assume that it doesn't find that she belongs to a cognizable particular social group and that she suffered past persecution, but it doesn't make those findings. Yes, Your Honor. This is not unusual for the Board of Immigration and Appeals. They walk that line where they assume certain elements were met in order to deny on a single element, often nexus or government inability or unwillingness. But they also, the IJ found her, deemed her credible, so we take her testimony as true, unless it's undermined by other evidence in the record. So what do we do with that? That's absolutely correct, Your Honor. And the sole indication in this case that the agency found that her evidence was undermined is when, I believe it was the immigration judge said that her testimony was contradicted by the Department of State report. But as Your Honor already noted, the Department of State report is very clear that the laws of El Salvador are not enforced, which is consistent with her testimony and her belief that the police would not assist her, as well as the experience of her aunt that she testified about when her aunt contacted the police because of child abuse, a form of domestic violence in her own home. And the police did respond, but only to counsel her abuser. Therefore, in addition, the government failed to really address at all the futility of Ms. Pineda-Escobar's, you know, had she contacted police. The closest police station, first of all, was two to three hours away. She had no phone. When she tried to ask her neighbor for help, since her neighbor did have a phone, her neighbor refused out of fear of Ms. Pineda-Escobar's husband. These are facts very similar to what the board considered in its most recent pronouncement on governmental inability and unwillingness, that is, matter of CGT. In that case, a teenager... Sorry, could I just ask a question? If we agree with you about inability and unwillingness, so for asylum and withholding, we think you can meet this unable or unwilling problem. Can we talk about the acquiescence for Kat for a minute? The three arguments were that the BIA failed to consider local officials as being part of the government, and also erred in concluding that the counseling didn't demonstrate acquiescence, and wrongly relied on the idea that your client hadn't reported. So I think maybe you made those three arguments. But I'm not sure that you really argued that the record compels the conclusion that the exact legal arguments that you made are right. Is there a general Kat argument here? I don't really see it in your brief. Yes, Your Honor. So in this case, there is no evidence in the record that public officials in Ms. Pineda-Escobar's local village will uphold their duty to protect her from future torture. In fact, all the evidence shows that they will not. Not just the Department of State evidence that Judge Wardlaw referred to, but also the fact that they failed to protect her aunt's children, her cousins, from abuse, and her own husband's threats and willingness to kill her if she contacted anyone about the abuse. In the Kat context, I think we've held that inability to protect is not enough. There actually has to be a willful unwillingness. And I'm not sure where we get that from this record. The counseling might not have worked, but how do we know that it doesn't demonstrate a willingness to try? What if they had counseled by saying, if you ever touch your kids again, we will kill you? Would that counseling have been an effort that might not work, but might have been enough to satisfy the Kat standard? So, Your Honor, it would not satisfy the Kat standard if all it did was open the door for the torturer to inflict torture. And based on the history in this case, that's what would have happened. That is why Ms. Pineda-Escobar did not tell medical authorities, not because she feared police would come. Obviously, she wouldn't have been afraid if she thought the police could protect her. But because based on everything she knew, the police would not protect her. Whether they were certainly able, I mean, they did come to the house. But the very fact that they did nothing, despite laws that require them to intervene, demonstrates that they were unwilling. They didn't issue a restraining order. They didn't arrest the husband. They didn't put him in jail. They did nothing. So, to that extent, that is what she saw, and that is the sole evidence, really, of how police behave in her local area. And that was enough, based on her credible testimony, to establish governmental acquiescence, public official acquiescence, I should say. And so your argument is that no warning, like what about my hypothetical? If they had said, if we ever hear again that you have hit your kids, we will kill you. With that warning, why is that warning not sufficient? Well, Your Honor, it is, if the police definitely, you know, the record shows that that is the way police dealt with torturers, then maybe that record, maybe that would be sufficient, because if the, it would actually stop tortures. But that is not what happened in this case. And in this case, there's no evidence that the police really did anything beyond counseling. It is similar to the police... Do we know anything about the detail of the counseling or subsequent events about the aunts? We do not. But based on this court's decision in Antonio v. Garland, where the police were given half measures, that is not enough to show that police are willing and able. And I know that is... I'm reading you about asylum, so I'm just asking about the acquiescence standard. What case says that this isn't enough to get past the acquiescence standard for the government? The only case that is really on point similarly is Matter of S.A. And those are different facts in the sense that we don't have police actually, you know, the person testifying did not say that police came and counseled. But they are similar regarding the threat of future harm and future danger. And in this case, as far as the police go and their counseling, the standard here is not just that police will be willing, but that they will breach their responsibility because they are unable or unwilling. And in that sense, the Convention Against Torture standard overlaps with the asylum standard. We have some language like that. But then we also have a lot of cases that say breaching because you're unable is not enough. You have to really breach because you're unwilling, for Kat, as I understand the case law. And I'm just not sure if you can meet that on the record here, or at least, I mean, I don't know if you can get a remand. Even maybe you could make your best argument for a remand, but I'm not sure how it would compel the conclusion here. Yes, our main argument with the Convention Against Torture is that given the evidence in the record that the agency failed to consider, that is evidence of social norms in which domestic violence is largely accepted, evidence of social pressures against rape victims and domestic violence victims, that evidence taken together with the specific evidence of what Ms. Pineda-Escobar testified as to what happened to her aunt demonstrates that police would be likely be unwilling. And the issue here is that the agency didn't even consider evidence of social norms. It never discussed that highly probative evidence, which the law requires it to consider, nor did it discuss any of the other evidence about her husband's threats to kill her, futility. Counsel, did you want to save some time? Oh, yes, Your Honor. Okay, thank you. All right. Mr. Stanton. Good morning, Your Honors. My name is Beau Stanton, and I'm here today on behalf of the respondent. Can everyone hear me OK? Yes, we can hear you. Thank you. OK, great. Thanks so much. For the court to grant the petitioner's review in this case, the petitioner must meet a high threshold. She must show that the record compels the conclusion that any reasonable adjudicator would be compelled to conclude that the Salvadorian government is unable or unwilling to protect her from her abusive husband. The evidence in this case, the universe is relatively small. We have petitioner's testimony in two country reports, one for 2014, another from 2015. This evidence, nothing in here, compels the conclusion that the Salvadorian government is unable or was unable to protect petitioner from her abusive husband. First, turning to petitioner's testimony, the agency noted that petitioner testified to an incident where her aunt called the police because her husband was beating her children. The police came out from one to two hours away. Petitioner testified that the police was about one to two hours away and the police took that amount of time to come out. They counseled her uncle and then left. According to petitioner, this was doing nothing. And it seems to be that she believes they were doing nothing because they didn't arrest him. An arrest doesn't mean, if there is a lack of arrest, doesn't mean that there was nothing done. Here we have where the police came, counseled, and then there is no testimony. There's nothing in a personal declaration. There's nothing anywhere in this evidence that shows that those efforts by the police officers did nothing. To the contrary, we have no evidence that the uncle ever beat the children ever again. There's literally nothing in the record that shows that those police efforts were futile. And on top of that, if you look at this incident, this was not a domestic violence incident. This was a child abuse incident. I don't think you've argued that in your brief, have you? I was actually sort of surprised that you didn't say there's some difference between spousal abuse and child abuse, but I didn't see anything like that in your brief. Can you point me to it? I'm not sure if we directly said something on point about that. About the distinction between the two being two separate crimes. And I apologize if that was not brought up in the brief, but I'm happy to talk about that now if that's if that's OK. I'm worried that you forfeited that argument at this point. So I'm not sure it's a good argument to be pursuing now personally, but maybe my colleagues feel differently. Oh, yeah. Yeah. No problem, Your Honor. It was just simply pointing out that this event would have been a good argument for the brief. The nature of the the violence is different and but it would have been a good argument for the brief. OK, OK, well, I'll move on then. Perhaps it's an argument for remand as opposed to outright grant. But anyway, go on. OK, sure, sure. Yes. The even even setting aside the different natures of the crime and setting that aside. This is evidence, substantial evidence that the Salvadorian government on a local level was trying to assist individuals. There is no evidence in this record that local police would do nothing to help petitioner on a local level. There's there's nothing. You have a question, Your Honor. I was just saying it's kind of a wash given what we're talking about is the crime of in the in the country reports. We deal with the fact that our test that that Escobar's testimony was deemed credible and and nothing seemed to undermine that in the record. The other elements of that are required to satisfy or to get asylum or withholding. I'm sorry, but what's the question, Your Honor? To test my credible, there's nothing in the record that undermines it. The only issue that seems to come to us on asylum or withholding is the unable or unwilling to control issue. Suppose we were to determine that substantial evidence doesn't support the BIA's finding that the El Salvadorian government was unable, was able to control the domestic violence. Do we outright grant on those claims or what is there to remand for? So assuming that the court overturns the agency's unable and unwilling finding, remand is the appropriate action to take because the Board of Immigration Appeals only focused on the unable and unwilling problem. But if you go look at the immigration judge's decision, he or she made the finding that the petitioner failed to show that she had been targeted on account of her membership in her proposed particular social group. So you have a lack of nexus finding that would have to be reconsidered by the agency on remand. And if you want to try to find that in the record, the page is, let me just double check for you, it's on page 48 of the record where the immigration judge makes that decision. But I don't believe remand is appropriate or necessary in this case, going back to the idea that we have this police response. We have no evidence that it failed. We have no evidence that local police would do nothing to help petitioner. We have the opposite. We have petitioner who testified that when she went to the doctor, she did not tell the doctor about the abuse because she was worried that her husband would have a legal requirement that any time there is domestic violence abuse, it's got to be reported to the authorities. So her fear that the police would actually respond if the doctor reported her is evidence that the police... Counsel, the problem with that is that we do have case law that says a police response that amounts to a slap on the wrist does not establish that the government is willing and able to prevent persecution. And then it certainly seems plausible to me that she would be afraid of the scenario in which, you know, the husband finds out, right, that there was some kind of report, but there is actually nothing done to prevent him from continuing to abuse her. So I'm not totally persuaded by the reasoning that just the fact that, you know, there would be a response means that response shows effectiveness. We don't know that the police response here was ineffective. There's no evidence to show that this was response. The fact that there was... But there's a lot of country conditions evidence where it does say that essentially, although the government has made some efforts, right, that there's some willingness that it's largely ineffective in their statistics. And then that I'm not persuaded by the agency's assertion that the country conditions evidence actually is undermines or conflicts with the petitioner's testimony that even though there's these laws that they're essentially not enforced. If you go look at the country conditions report, when it discusses domestic violence against women in particular, it talks about how there's a law in the books that requires a prosecution of a rape case once it's been reported, even if the victim does not want to go forward with that case. You do not have that sort of language regarding child abuse in the country report. There is no language at all that if a police officer is called out to a child abuse event that they have to arrest that individual. There's nothing like that in the record. And so to say that that incident shows ineffectiveness and unwillingness or inability to do something, there's no evidence, certainly no compelling evidence for that. And speaking to your point about how the country report talks about these laws being passed, talks about how the government has implemented programs to try to provide education, then you talk about how there also talks about it being minimally effective. The country report is mixed on this. There isn't anything that is more compelling than the other. Well, you take this country report and you couple it with petitioner's testimony where she testified that my aunt called the local police and the local police responded. I'm afraid to tell the doctor about my domestic violence abuse because he's going to have to report it. The police are going to come and my husband may kill me. She also testified that her husband was afraid to have the police come because he knew that he would be arrested. When she testified, when she was questioned about what she was afraid of when going back to El Salvador, she said her husband and she was asked, well, why would the government be able to help you? Well, it's because he would hide from the government. Implicit in that testimony is that the government would do something against petitioner's husband. Otherwise, why would he have to hide from the police? So you have this evidence from petitioner's testimony. It talks about her fear of a response, his fear of a response. We have her testimony where her aunt actually did get a response and there's no evidence that it was ineffective. So you have a mixed country report that says that laws have been minimally effective, but it's required by law for rape to be investigated and prosecuted. Well, here you have petitioner says, well, on a local level, police did respond. And if you look at the testimony, at no point does she, excuse me, let me get a glass of does she say the reason why she doesn't contact the police is because she believes the government is unable or unwilling. It all goes back to this fear of her husband hurting her. And it's repeated throughout the record from 74 to 76, 112, 102. She makes it clear that it wasn't the government's inability to protect her. That wouldn't actually come out until redirect. So if you look at the testimony on direct examination, it's all fear of her husband. That's why she doesn't call the police on cross-examination. She's questioned about the country conditions report and asked if she knows about that there's laws on the books. No. Well, it would be on redirect where her counsel would ask a leading question and he would use the country reports and says the country reports say the laws are minimally effective. Is this the reason why you didn't go to the police? Yes. So it wasn't actually her testimony. That said, it was the government's inability that kept her from going to the government for help. That never came out. It wouldn't be until a leading question. And so if you go look at the testimony coupled with the country conditions report, it is substantial evidence in support of the agency's determination that the Salvadoran government isn't unable or unwilling. To the contrary, her testimony shows that the government does want to help. They have requirements where the doctor has to inform them of any domestic violence. So the government not only has programs and policies in place, she knows that they are executed and implemented to the point where she's afraid to report them. And so stepping back and looking at this, this case doesn't have the sort of evidence that other cases that this court have found, for example, in Davila. The petitioner relies on this case, says that her case is similar to this. Well, in that case, the petitioner did call the police and the police came down and her husband would go out to them, pay them off with a bribe. They went away without even talking to her or even looking at her. This is one major factual distinction between that case and this case. And that's how it is with all the cases that petitioner cites. There's all these major factual differences, whether it's reporting to the police, whether there's more country conditions, evidence beyond country reports. There's news articles that discuss other events and other cases. There simply is insufficient evidence for this court to find that any reasonable adjudicator would be compelled to find that the Salvadorian government is unable or unwilling to protect her. And there is there's just simply nothing. There's no case that. Yes, your honor. Have the parties explored mediation in this case? I I'm not sure, your honor, this case has been around for a few years and I was I just picked it up this year, so I don't know if there was mediation efforts beforehand and I apologize for not knowing that. Am I right that the petitioner doesn't fit with any of the enforcement priorities? Based on my recollection, it doesn't seem like she is an enforcement priority. OK, and that is that a reason that mediation might be fruitful in the future? We don't believe mediation is necessary in this case because we do believe that substantial evidence supports the agency determination that petitioners on a title to asylum or withholding of removal due to a lack of evidence for the unable or willing prong. On top of that, going to the cat claim, as your honor was pointing out, there is no evidence in the record that there is any government official locally, nationally would acquiesce to the torture of petitioner in this case. And she doesn't identify anything in her record as well in the opening brief. And so the board in this case, as well as immigration judge, did consider the record overall, did consider the country report in its totality. If you look at both decisions, they both acknowledge the shortcomings that are present in the country conditions evidence for the government's efforts. They recognize that site to it. And they looked at that set of facts. They compared the set of facts in the country report that talks about the government having laws that they're trying to implement. And then they looked at the petitioner's testimony and said, OK, on balance, which way do these scales tip? And ultimately, they concluded that petitioner's testimony where she identifies a police response, identify police policies in place that she's afraid of will actually work. That couple of the country conditions evidence talking about how the government's trying to make efforts and is trying to make progress for something to be minimally effective means it has to be effective some of the time. And so here we have an example of where the government has been effective. And so on balance, the agency looked at the scales, looked at how the evidence weighed up and down on the scales and ultimately decided the scales tipped to where she failed to show that the government is unable or unwilling to protect her from her. Thank you, counsel. You're over your time. We appreciate. Thank you very much. Thank you so much, Your Honor. Miss McKee, you have a minute or so. Thank you, Your Honor. I just a few points. First off, the country reporting this situation in this case is not mixed, as a respondent would characterize it. There is no evidence that in the report, no statement that any of the laws against domestic violence and rape were actually effective or even partially effective. Second, the fact that the husband's threats worked or the husband threatened to kill her and that he hid does not mean police were effective. He said he would be out of jail the next day. And this is consistent with Miss Pineda-Escobar's own testimony about what she saw in news reports. Abusers released the next day and he would get her then. Further, as the board in matter of CGT noted, it looked at whether a victim would reasonably believe that police would not respond. And here, given how she saw police respond to her aunt, even if it was child abuse, even if it was a different form of domestic violence, she decided as a reasonable person would that they she couldn't risk it because her husband would kill her if she tried to report and police just counseled. Thank you, Your Honors. We believe that, you know, based on the Board of Immigration Appeals opinion, since the board found error only with inability and unwillingness, a court disagrees. We would say that a reband definitely is warranted in this case based on the board's complete and the agency's complete disregard for a huge portion of the highly probative evidence. All right. Thank you, counsel. I want to thank Cornell Law School's Clinic on Asylum and Convention Against Torture for taking on this matter pro bono. And we always appreciate pro bono counsel arguing on behalf of the petitioners in these cases. So Pineda v. Garland will be submitted.
judges: WARDLAW, FRIEDLAND, SUNG